Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
9100 Wilshire Blvd. #725 E.
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile:  310/209-2348

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| REGINALD PADILLA,<br><br>Plaintiff,<br><br>vs.<br><br>ANWORTH MORTGAGE ASSET CORPORATION, JOSEPH E. MCADAMS, JOE E. DAVIS, ROBERT C. DAVIS, MARK S. MARON, LLOYD MCADAMS, and DOMINIQUE MIELLE,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Reginald Padilla ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

- 1 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

## NATURE OF THE ACTION

1. Plaintiff brings this action against Anworth Mortgage Asset Corporation ("Anworth" or the "Company") and the members of Anworth's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, arising out of their attempts to merge with Ready Capital Corporation ("Ready Capital") through Ready Capital's subsidiary RC Merger Subsidiary ("Merger Sub") (the "Proposed Transaction").

2. On December 7, 2020, Anworth announced that it had entered into an Agreement and Plan of Merger (the "Merger Agreement") pursuant to which, each Anworth stockholder will be entitled to receive 0.1688 shares of Ready Capital common stock and $0.61 in cash for each share of Anworth common stock they own.

3. On January 4, 2021, Ready Capital filed a Form S-4 Registration Statement (the "S-4") with the SEC. The S-4 is materially deficient and misleading because, *inter alia*, it fails to disclose material information regarding: (i) the financial projections for Anworth and Ready Capital and the data and inputs underlying the valuation analyses that support the fairness opinion provided by the Company's financial advisor, Credit Suisse Securities (USA) LLC ("Credit Suisse"); (ii) Credit Suisse's potential conflicts of interest; and (iii) the background of the Proposed

Transaction. Without additional information, the S-4 is materially misleading in violation of the federal securities laws.

4. The stockholder vote to approve the Proposed Transaction is forthcoming. Under the Merger Agreement, following a successful stockholder vote, the Proposed Transaction will be consummated. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin defendants from conducting the stockholder vote on the Proposed Transaction unless and until the material information discussed below is disclosed to the holders of the Company common stock, or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6. The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because: (i) the Company's principal executive offices are located in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; and (iii) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Anworth.

9. Defendant Anworth is a Maryland corporation, with its principal executive offices located at 1299 Ocean Avenue, 2nd Floor, Santa Monica, California 90401. Anworth's common stock trades on the New York Stock Exchange under the ticker symbol "ANH."

10. Defendant Joseph E. McAdams is Chairman of the Board and has served as Chief Executive Officer of the Company since September 2018, President since July 2016, Chief Investment Officer since January 2003, and a director and Executive Vice President of the Company since June 2002.

11. Defendant Joe E. Davis has served as a director of the Company since 1997.

12. Defendant Robert C. Davis has served as a director of the Company since May 2005.

13. Defendant Mark S. Maron has served as a director of the Company since May 2014.

14. Defendant Lloyd McAdams has served as a director of the Company since 1997.

15. Defendant Dominique Mielle has served as a director of the Company since November 2018.

16. Defendants identified in paragraphs 10-15 are referred to herein as the "Board" or the "Individual Defendants."

17. Relevant non-party Ready Capital is a multi-strategy real estate finance company that originates, acquires, finances and services small- to medium-sized balance commercial loans.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company and the Proposed Transaction**

18. Anworth is a real estate investment trust ("REIT") externally managed and advised by Anworth Management, LLC (the "Manager"). The Company invests in, finances, and manages a leveraged portfolio of residential mortgage-backed securities ("MBS") and residential mortgage loans, which presently includes the following types of investments:

- Agency MBS, which include residential mortgage pass-through certificates and collateralized mortgage obligations ("CMOs"), which are securities representing interests in pools of mortgage loans secured by residential property in which the

> principal and interest payments are guaranteed by a government-sponsored enterprise ("GSE"), such as the Federal National Mortgage Association ("Fannie Mae"), or the Federal Home Loan Mortgage Corporation ("Freddie Mac").

- Non-agency MBS, which are securities issued by companies that are not guaranteed by federally sponsored enterprises and that are secured primarily by first-lien residential mortgage loans.

- Residential mortgage loans. Anworth acquires non-Qualified Mortgage ("Non-QM") residential mortgage loans from independent loan originators with the intent of holding these loans for securitization. These loans are financed by a warehouse line of credit until securitization. Anworth also holds residential mortgage loans through consolidated securitization trusts, and finances these loans through asset-backed securities ("ABS") issued by the consolidated securitization trusts. The ABS, which are held by unaffiliated third parties, are non-recourse financing. The difference in the amount of the loans in the trusts and the amount of the ABS represents the Company's retained net interest in the securitization trusts.

19. On December 07, 2020, Anworth and Ready Capital issued a joint press release announcing the Proposed Transaction. The press release states, in relevant part:

NEW YORK & SANTA MONICA, Calif. -- Ready Capital Corporation (NYSE:RC) ("Ready Capital"), a multi-strategy real estate finance company that originates, acquires, finances and services small- to

medium-sized balance commercial loans, and Anworth Mortgage Asset Corporation (NYSE:ANH) ("Anworth"), a specialty finance REIT that focuses primarily on investments in residential mortgage-backed securities, announced today that they have entered into a definitive merger agreement pursuant to which Ready Capital will combine with Anworth. The combined company is expected to have a pro forma equity capital base in excess of $1 billion. The combination is expected to enhance shareholder liquidity and provide for increased operating leverage across the larger equity base.

Under the terms of the merger agreement, each share of Anworth common stock will be converted into 0.1688 shares of Ready Capital common stock and $0.61 of cash consideration. Based on Ready Capital's closing stock price on Friday, December 4, 2020, the implied offer price is $2.94 per share. Upon the closing of the merger, Ready Capital stockholders are expected to own approximately 76% of the combined company's stock, while Anworth stockholders are expected to own approximately 24% of the combined company's stock. Ready Capital will also assume Anworth's three outstanding series of preferred stock.

In connection with the merger, Waterfall Asset Management, LLC ("Waterfall"), Ready Capital's external manager, has agreed to reduce the

- 7 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

medium-sized balance commercial loans, and Anworth Mortgage Asset Corporation (NYSE:ANH) ("Anworth"), a specialty finance REIT that focuses primarily on investments in residential mortgage-backed securities, announced today that they have entered into a definitive merger agreement pursuant to which Ready Capital will combine with Anworth. The combined company is expected to have a pro forma equity capital base in excess of $1 billion. The combination is expected to enhance shareholder liquidity and provide for increased operating leverage across the larger equity base.

Under the terms of the merger agreement, each share of Anworth common stock will be converted into 0.1688 shares of Ready Capital common stock and $0.61 of cash consideration. Based on Ready Capital's closing stock price on Friday, December 4, 2020, the implied offer price is $2.94 per share. Upon the closing of the merger, Ready Capital stockholders are expected to own approximately 76% of the combined company's stock, while Anworth stockholders are expected to own approximately 24% of the combined company's stock. Ready Capital will also assume Anworth's three outstanding series of preferred stock.

In connection with the merger, Waterfall Asset Management, LLC ("Waterfall"), Ready Capital's external manager, has agreed to reduce the

base management fee it charges Ready Capital by an aggregate of $4 million over the four quarters immediately following the closing of the transaction.

Based on the closing prices of Ready Capital's common stock on December 4, 2020, the market capitalization of the combined company would be approximately $984 million.  The combined company will operate under the name Ready Capital and its shares are expected to continue trading on the New York Stock Exchange under the existing ticker symbol "RC".

"This merger highlights our continued focus on establishing Ready Capital as an industry-leading mortgage REIT, with the scale and financial resources to pursue compelling risk-adjusted returns across its diversified investment platform," stated Ready Capital Chairman and Chief Executive Officer Thomas Capasse.  "The combined company will be in a more formidable position to execute its business plan, improve operating and cost efficiencies, and continue growth in a prudent and profitable manner."

**Anticipated Benefits to Ready Capital and Anworth Stockholders from the Merger**

- Over $1 billion combined capital base and a diversified investment portfolio
- Portfolio redeployment will enable Ready Capital to capitalize on attractive investment opportunities
- Scale advantages include:
    - Reduced operating expenses (as a percentage of combined capital base)
    - Improved access to financing, including corporate debt funding alternatives
    - Greater portfolio diversification
    - Enhanced shareholder liquidity and investor base diversity

**Management, Governance and Corporate Headquarters**

Upon completion of the merger, Ready Capital's Chairman and Chief Executive Officer Thomas Capasse will lead the company and Ready Capital executives Jack Ross, Thomas Buttacavoli, Andrew Ahlborn and Gary Taylor will remain in their current roles. The combined company will be headquartered in New York, New York. The Board of the combined company is expected to have eight directors, consisting of Ready Capital's existing seven directors and one independent director from Anworth's current Board.

**The S-4 Misleads Anworth Stockholders by Omitting Material Information**

20. On January 4, 2021, defendants filed the materially misleading and incomplete S-4 with the SEC. Designed to convince Anworth's stockholders to vote in favor of the Proposed Transaction, the S-4 is rendered misleading by the omission of critical information concerning: (i) the financial projections for Anworth and Ready Capital and the data and inputs underlying the valuation analyses that support the fairness opinion provided by the Company's financial advisor, Credit Suisse; (ii) Credit Suisse's potential conflicts of interest; and (iii) the background of the Proposed Transaction.

***Material Omissions Concerning Anworth's and Ready Capital's Financial Projections and Credit Suisse's Financial Analyses***

21. The S-4 omits material information regarding the financial projections for Anworth and Ready Capital.

22. For example, the S-4 fails to disclose: (i) the distributed cash flows that Anworth was forecasted to generate during the last quarter of Anworth's fiscal year ending December 31, 2020 through the full fiscal year ending December 31, 2023; (ii) the distributed cash flows that Ready Capital was forecasted to generate during the last quarter of Ready Capital's fiscal year ending December 31, 2020 through the full fiscal year ending December 31, 2025; and (iii) Anworth's estimated total book value per share over the projection period.

23. The S-4 omits material information regarding Credit Suisse's financial analyses.

24.  The S-4 describes Credit Suisse's fairness opinion, and the various valuation analyses it performed in support of its opinion. However, the description of Credit Suisse's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Anworth's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Credit Suisse's fairness opinion in determining whether to vote in favor of the Proposed Transaction.

25.  With respect to Credit Suisse's *Selected Public Companies Analysis*, the S-4 fails to disclose the individual multiples and financial metrics for each of the companies observed by Credit Suisse.

26.  With respect to Credit Suisse's *Selected Precedent Transactions Analysis*, the S-4 fails to disclose the individual multiples and financial metrics for each of the transactions observed by Credit Suisse.

27.  With respect to Credit Suisse's *Dividend Discount Analysis* of Anworth and Ready Capital, the S-4 fails to disclose: (i) the distributed cash flows that Anworth was forecasted to generate during the last quarter of Anworth's fiscal year ending December 31, 2020 through the full fiscal year ending December 31, 2023; (ii) the distributed cash flows that Ready Capital was forecasted to generate during the last quarter of Ready Capital's fiscal year ending December 31, 2020 through the full fiscal year ending December 31, 2025; (iii) Credit Suisse's basis for selecting the range of tangible book value per share ("TBVPS") multiples of 0.70x to 0.90x for Anworth and

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

0.80x to 1.00x for Ready Capital; and (iv) the inputs and assumptions underlying the discount rates ranging from 9.0% to 14.0% and 9.0% to 13.0%, respectively.

28. The omission of this material information renders certain portions of the S-4 materially misleading, including, *inter alia*, the following sections of the S-4: "Certain Ready Capital Unaudited Prospective Financial Information," "Certain Anworth Unaudited Prospective Financial Information" and "Opinion of Anworth's Financial Advisor."

***Material Omissions Concerning Credit Suisse's Potential Conflicts of Interest***

29. The S-4 fails to disclose material information concerning the potential conflicts of interest faced by Credit Suisse.

30. For example, the S-4 fails to disclose any past services performed by Credit Suisse for the Company or its affiliates and the fees received by Credit Suisse for providing these services.

31. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

32. The omission of this material information renders certain portions of the S-4 materially misleading, including, *inter alia*, the following section of the S-4: "Opinion of Anworth's Financial Advisor."

***Material Omissions Concerning the Background of the Proposed Transaction***

- 12 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

33. The S-4 fails to disclose material information concerning the background of the Proposed Transaction.

34. For example, the S-4 fails to disclose the specific terms of the confidentiality agreements the Company entered into with potential bidders and whether any of the confidentiality agreements entered into with potential bidders during the sale process included standstill provisions or "don't-ask, don't-waive" standstill provisions that are still in effect and presently precluding any potential counterparty from submitting a topping bid for Anworth.

35. Any reasonable Anworth stockholder would deem the fact that a likely topping bidder may be precluded from making a topping bid for the Company to significantly alter the total mix of information.

36. Additionally, the S-4 fails to disclose (i) the terms of any bids or indications of interest received by the Company from a party identified in the S-4 as "Company A"; (ii) the terms of the verbal proposals the Company received between May and August 2020; and (iii) the third party valuation reports and sum-of-the-parts analyses used to validate Anworth's and Ready Capital's respective book value, discussed by Credit Suisse and Ready Capital's financial advisor Wells Fargo Securities, LLC.

37. The omission of this material information renders certain portions of the S-4 materially misleading, including, inter alia, the following section of the S-4: "Background of the Merger."

38. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

## COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

39. Plaintiff repeats all previous allegations as if set forth in full.

40. During the relevant period, defendants disseminated the false and misleading S-4 specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

41. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the S-4. The S-4 was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about Anworth's and Ready Capital's projections, the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Credit Suisse, Credit Suisse's potential conflicts of interest and the background of the Proposed Transaction. The

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

defendants were at least negligent in filing the S-4 with these materially false and misleading statements.

42. The omissions and false and misleading statements in the S-4 are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

43. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

44. Because of the false and misleading statements in the S-4, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Claims Against the Individual Defendants for**

**Violations of Section 20(a) of the Exchange Act**

45. Plaintiff repeats all previous allegations as if set forth in full.

46. The Individual Defendants acted as controlling persons of Anworth within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Anworth, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the S-4 filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the

Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

47. Each of the Individual Defendants was provided with or had unlimited access to copies of the S-4 and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

48. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The S-4 at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the S-4.

49. In addition, as the S-4 sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The S-4 purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

50. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

51. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a)

and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Anworth's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Anworth, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to disseminate an S-4 that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

E. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: January 26, 2021

**WEISSLAW LLP**
Joel E. Elkins

By: _____

Joel E. Elkins
9100 Wilshire Blvd. #725 E.
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile: 310/209-2348
    -and-
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, NY 10036
Telephone: 212/682-3025
Facsimile: 212/682-3010

*Attorneys for Plaintiff*

**BRAGAR EAGEL & SQUIRE, P.C.**
Alexandra B. Raymond
810 Seventh Avenue, Suite 620
New York, NY 10019
Tel: (646) 860-9158
Fax: (212) 214-0506
Email: raymond@bespc.com

*Attorneys for Plaintiff*

- 18 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS